Frederick H. Nelson, Esq.
(Lead Counsel)
Florida Bar No. 0990523
**AMERICAN LIBERTIES INSTITUTE**
P.O. Box 547503
Orlando, FL  32854-7503
Telephone: (407) 786-7007
Facsimile: (877) 786-3573
Email: Rick@ali-usa.org
(pending admission)

Joel J. Kirkpatrick, Esq.
(Local Counsel)
Michigan Bar No. P62851
**Kirkpatrick Law Offices, P.C.**
31800 Northwestern Hwy., Ste 350
Farmington Hills, MI 48334
Telephone:  (248) 855-6010
Facsimile:  (866) 241-4152
Email:  joel@kirk-law.com

Attorneys for Plaintiffs CONGREGATION SHEMA YISRAEL, LOREN JA-COBS and MARTHA JACOBS

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN

CONGREGATION SHEMA YIS-RAEL, a Michigan non-profit corpora-tion, LOREN JACOBS, as an Individ-ual and as an employee of CONGRE-GATION SHEMA YISRAEL, MAR-THA JACOBS, as an Individual and as associated with CONGREGATION SHEMA YISRAEL,

                Plaintiffs,

vs.

CITY OF PONTIAC, MICHIGAN, a municipal corporation, and DOES 1 through 10,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:

**PLAINTIFFS' COMPLAINT:**

**1.  VIOLATION OF THE FREE-DOM OF SPEECH CLAUSE OF THE FIRST AMENDMENT;**

**2.  VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT;**

**3.   PERMANENT INJUNCTION; AND,**

**4.  DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

**PLAINTIFFS' COMPLAINT**

Plaintiffs allege as follows:

## NATURE OF THE CASE

1.      This action to vindicate the constitutional and civil rights of Plaintiffs CONGREGATION SHEMA YISRAEL, a Michigan non-profit corporation, LOREN JACOBS, as an Individual and as an employee of CONGREGATION SHEMA YISRAEL, and MARTHA JACOBS, as an Individual (hereinafter "Plaintiffs") arises from the activities of Plaintiffs near the Arts, Beats and Eats Festival during the years 2004 through 2009, who, while distributing leaflets on public streets and sidewalks, were engaged in the lawful exercise of their constitutional rights on public property.

2.      Plaintiff CONGREGATION SHEMA YISRAEL is organized for the purpose of proclaiming the message of the Gospel of Jesus Christ to Jewish people and providing a place for Jewish and Gentile individuals to worship and assemble for religious and social purposes.  Plaintiffs LOREN JACOBS and MARTHA JA-COBS are either employed or associated with Plaintiff CONGREGATION SHEMA YISRAEL and also seek to protect their constitutional rights on public property as individuals.  Plaintiffs perform their evangelistic work by peaceably handing out leaflets at public places and public events.  While engaged in this work by handing out leaflets near the Arts, Beats & Eats Festivals, Plaintiffs were re-

**PLAINTIFFS' COMPLAINT**

peatedly threatened with arrest unless they cease speaking to the public or distri-

buting leaflets and immediately leave the area.

## JURISDICTION AND VENUE

3.     Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983

due to deprivations of Plaintiffs' rights secured by the United States Constitution.

4.     This Court is authorized to grant Plaintiffs' prayer for relief and to

award Plaintiffs' costs in this action for violations of Plaintiffs' constitutional and

civil rights, including a reasonable attorney's fee, under Title 42 U.S.C. § 1988 and

*Code of Civil Procedure* section 1021.5, and taxable costs pursuant to Title 28

U.S.C. § 1920.

5.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and

1343(a)(4), which provide for original jurisdiction in this Court of all suits brought

pursuant to 42 U.S.C. § 1983.  Jurisdiction is also conferred on this Court by 28

U.S.C. § 1331 because the cause of action arises under the Constitution and laws of

the United States.  This Court has jurisdiction over the pendant state law claims

pursuant to Title 28 U.S.C. § 1367(a).

6.     This Court is authorized to grant Declaratory Judgment under the

Declaratory Judgment Act, Title 28 U.S.C. §§ 2201 and 2202 (1988), implemented

through Rule 57 of the Federal Rules of Civil Procedure, and to issue the Perma-

**PLAINTIFFS' COMPLAINT**

nent Injunctive relief requested by Plaintiffs under Rule 65 of the Federal Rules of Civil Procedure.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, the Defendants reside and/or do business and may be found and served in the Eastern District of Michigan.  Venue is proper for the additional reasons that at all times mentioned herein the events took place within the Eastern District of Michigan.

## **PARTIES**

8.    Plaintiff CONGREGATION SHEMA YISRAEL (hereinafter when warranted by context "Congregation Shema Yisrael") is a not-for-profit 501(c)(3) corporation, which began in 1990, with its offices located in Bloomfield Hills, Michigan.

9.    Plaintiff LOREN JACOBS (hereinafter when warranted by context "Loren Jacobs") is an individual.  Loren Jacobs is an employee and member of Congregation Shema Yisrael.

10.    Plaintiff MARTHA JACOBS (hereinafter when warranted by context "Martha Jacobs") is an individual and a member of Congregation Shema Yisrael.

11.    Defendant CITY OF PONTIAC, MICHIGAN (hereinafter when warranted by context "City of Pontiac"), is a public entity established, organized, and authorized under and pursuant to the laws of Michigan, with the authority to be

**PLAINTIFFS' COMPLAINT**

sued in its own name, and is within the jurisdiction of this Court and is subject to litigation in this venue.

12.    Plaintiffs are ignorant of the true and complete names and capacities of some Defendants sued herein, including those listed herein and Does 1 through 10, and for that reason have sued them by their fictitious names.  On information and belief, Plaintiffs allege that each of these fictitiously named Defendants is responsible in some manner for some or all of the acts alleged herein.  Plaintiffs will amend this Complaint to set forth the true and complete names and capacities of the partially-named and fictitiously-named Defendants once ascertained.

13.    Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein, including those named herein as Does, are the agents, servants, employees, licensees, guarantees, indemnitors, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment, license, guaranty, indemnity, invitation, assignment and/or relationship and with the full knowledge, consent and approval of the remaining Defendants.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

14.    Since 2004, Plaintiffs have distributed free religious literature at the annual Arts, Beats and Eats Festival (hereinafter "Festival") in areas inside and

**PLAINTIFFS' COMPLAINT**

outside the Festival which are open to the general public.  Until 2007, Plaintiffs have distributed their literature without incident or controversy.

15.    Mr. Glenn Harris (hereinafter "Mr. Harris") is an individual.  Mr. Harris is an employee and member of Plaintiff Congregation Shema Yisrael.

16.    Mr. Kim Glander (hereinafter "Mr. Glander") is an individual and a member of Plaintiff Congregation Shema Yisrael.

17.    Ms. June Glander (hereinafter "Ms. Glander") is an individual and a member of Plaintiff Congregation Shema Yisrael

18.    Mr. Roy White (hereinafter "Mr. White") is an individual and a member of Plaintiff Congregation Shema Yisrael.

19.    Ms. Elizabeth Sawyer (hereinafter "Ms. Sawyer") is an individual and a member of Plaintiff Congregation Shema Yisrael.

20.    In 2004, Plaintiffs and those individuals named in paragraphs 15-19 inclusive (hereafter collectively as "Individuals") openly and without incident or controversy distributed over 10,000 pieces of free literature in areas within and near the Festival area open to the general public.

21.    In 2005, Plaintiffs and Individuals openly and without controversy distributed over 10,000 pieces of free literature in areas within and near the Festival area open to the general public.

**PLAINTIFFS' COMPLAINT**

22.    In 2006, Plaintiffs and Individuals openly and without controversy distributed over 10,000 pieces of free literature in areas within and near the Festival area open to the general public.

**Literature Distribution At The 2007 Festival**

23.    Until 2007, Plaintiffs and Individuals openly and without incident or controversy engaged in the distribution of free literature in areas within and near the Festival area open to the general public.  That year, for the first time ever, Plaintiffs and Individuals were confronted with resistance to their practice of distributing free literature in public areas open to the general public.

24.    On Labor Day weekend (August 31-September 3), 2007, the Festival was held again on the streets and sidewalks of the City of Pontiac, Michigan.

25.    During the 2007 Festival, Plaintiffs and Individuals distributed literature within and near the Festival as they had done in prior years, 2004, 2005, and 2006, without incident on Friday, August 31, 2007, and Saturday, September 1, 2007.

26.    On Sunday, September 2, 2007, Mr. Glander and Ms. Glander were standing on the public street inside the Festival area.  They were North and East of the entrances at Saginaw and Pike streets, respectively.  They were distributing literature to people coming into the Festival and entering the Saginaw or Pike street areas of the Festival.

**PLAINTIFFS' COMPLAINT**

27.    On Sunday, September 2, 2007, Plaintiffs and Individuals were surrounded by 6-8 police officers who told them the Festival was a "private event" and they could not distribute literature.  The police threatened an arrest if they continued to distribute literature.  Plaintiffs and Individuals asked whether it was acceptable to distribute literature outside the Festival area and the police officers told them it did not matter.

28.    On Sunday, September 2, 2007, Plaintiffs and Individuals were told that literature distribution was "banned" inside the Festival area even on the public streets and public sidewalks.  A police Sergeant and five police officers then escorted Mr. Glander and Ms. Glander out of the Festival area.  Other Plaintiffs and Individuals followed.

29.    Plaintiff Loren Jacobs then called the City of Pontiac Police Department and spoke to Officer Thomas.  After Officer Thomas conferred with Captain Kilty, Officer Thomas told Plaintiff Loren Jacobs that Captain Kilty had "made a decision" about literature distribution and would not allow any literature distribution in the Festival area because the Defendant, City of Pontiac, had leased the Festival area to another organization.

30.    Plaintiffs and Individuals, upon threat of arrest, did not return to distribute literature for the remainder of the 2007 Festival.

**PLAINTIFFS' COMPLAINT**

**Plaintiffs' Attempts To Resolve Issues Without Litigation**

31.　On or about September 19, 2007, Plaintiffs' counsel sent a letter to the Festival explaining that Plaintiffs requested to distribute literature at future Festivals and requesting a meeting to discuss literature distribution at the Festivals in an attempt to resolve the issues without litigation.  The letter stated in part, "in order to create a relationship between your office and ours, we request that you contact us to establish a meeting.  The goal of our meeting is to obtain a memorandum of understanding regarding literature distribution at your Arts, Beats and Eats event".

32.　On or about September 19, 2007, Plaintiffs' counsel also sent a copy of the letter to the Chief of Police, Mr. Valard Gross, of the Defendant City of Pontiac's Police Department.

33.　On or about September 19, 2007, Plaintiffs' counsel also sent a copy of the letter to Mayor Mr. Clarence Phillips of the Defendant City of Pontiac.

34.　On or about September 19, 2007, Plaintiffs' counsel also sent a copy of the letter to Mr. Andre Poplar, City Attorney for the Defendant City of Pontiac.

35.　On or about November, 2007, Plaintiffs' counsel talked to the Festival's counsel, Henry Wineman, regarding literature distribution at future Festivals.

36.　On or about November 6, 2007, Plaintiffs' counsel received an email from Mr. Wineman, stating that Plaintiffs could only distribute literature at future Festivals if they paid the fee as "an official non-profit Festival Booth Sponsor".

**PLAINTIFFS' COMPLAINT**

37.    On or about November 13, 2007, Plaintiffs' counsel spoke with Mr. Poplar, counsel for Defendant, City of Pontiac, who stated that Plaintiffs could only distribute literature at future Festivals if Plaintiff paid for a booth at the Festival.

38.    Plaintiffs' obtained an application for booth sponsorship for the 2008 Festival.  The application required a booth sponsor to pay the Festival $1,500.00 for a booth.  The booth application requires booth sponsors to include with the application all "products and services to be sold, offered or referred to" during the Festival.  Further, the contract states that all exhibitors "material must be kept" within "their tent space" and "distribution of samples and literature is strictly limited to the confines of the Exhibitor's booth".

39.    On or about April 17, 2008, Plaintiffs' counsel sent a public records request to the Defendant, City of Pontiac, in an attempt to ascertain the scope of the Festival's permitting.  The public records request sought copies of all permit applications submitted by the Festival to Defendant, City of Pontiac. The letter requested "The permit application(s), special event(s) permit application(s), large special event(s) proposal(s) and/or other permit and/or permit related application(s) submitted by the ABE [Arts, Beats and Eats] and/or representatives, groups, agencies, boards, foundations, affiliates, partnerships, independent contractors and/or corporations (for profit or non-profit), representing it (referred hereinafter collectively as "Representatives") to Pontiac and/or its Departments."

**PLAINTIFFS' COMPLAINT**

40.    After a delay, Defendant, City of Pontiac, responded to the records request with material largely unresponsive to the issue of permitting and the scope of the Festival's permit.  Therefore, Plaintiffs were unable to ascertain the answer for purposes of literature distribution or determine the scope of the permit(s) issued to the Festival for 2007 and 2008.

**Literature Distribution At The 2008 Festival**

41.    In 2008, Plaintiffs and Individuals again distributed literature within the area of the Festival.  As Plaintiffs where distributing literature, they were approached by Defendants' police officers telling them they could not distribute literature within the Festival.  Plaintiffs and Individuals pointed out that a lawyer, who at the time was running for a judicial seat, was distributing literature for his campaign within the Festival.  Police then went to talk to the lawyer who, after some discussion, the officers left him and went back to Plaintiffs and Individuals, telling them they were allowed to distribute literature near the Festival area open to the general public.

**Literature Distribution At The 2009 Festival**

42.    On Sunday, September 6, 2009, Plaintiffs went to distribute literature at the Festival.  The Festival area itself was enclosed by fencing and required an admission ticket for entry into the enclosed Festival area.  At all times during their distribution of literature, Plaintiffs remained outside the enclosed Festival area on

Page 11

the public sidewalks at the corners of Saginaw and Water Streets in the City of Pontiac. During their distribution of literature, Plaintiffs were able to distribute over 2,500 pieces of literature and engage several people in conversation.

43.    On Monday, September 7, 2009, Plaintiffs again went to distribute literature at the Festival in the same area as the day before. As Plaintiffs were preparing to begin distributing literature at Water Street, Defendant City of Pontiac's Chief of Police, Valard Gross, and Defendant City of Pontiac's Police Captain, Robert Miller, approached Plaintiffs. Captain Miller stated Plaintiffs were not allowed to remain on the public sidewalks near the corners of Saginaw and Water Streets because "the sponsors of the Festival didn't want it". Captain Miller added that the Plaintiffs would need to go a block farther away, between Woodward and Perry Streets.

44.    On Monday, September 7, 2009, Plaintiff Loren Jacobs asked Captain Miller if Plaintiffs were allowed to simply talk with people at the corners of Saginaw and Water Streets, and not hand out any literature. Plaintiff Loren Jacobs was told Plaintiffs were not allowed to even speak with anyone near the corners of Saginaw and Water Streets.

45.    On Monday, September 7, 2009, Plaintiffs complied with Captain Miller's directive and repositioned themselves a block away, on the northwest and

**PLAINTIFFS' COMPLAINT**

southwest corners of Perry and Water Streets.  Plaintiffs noted they were directed to a location with significantly reduced pedestrian traffic.

46.    On Monday, September 7, 2009, at approximately 2:30 p.m., Captain Miller approached Plaintiff Loren Jacobs and stated that Plaintiff Martha Jacobs could not stand on the South side of the intersection of Water Street at Perry Street. Captain Miller stated that Plaintiff Martha Jacobs must immediately move to the North side of the street.  Plaintiffs wanted to remain on the South side of Perry and Water Streets because there were many more people on the South side of the street.

47.    On Monday, September 7, 2009, Plaintiff Loren Jacobs explained to Captain Miller that he wanted to be absolutely clear where Plaintiffs were allowed to distribute literature and talk with the public.  Plaintiff Loren Jacobs asked Captain Miller if he could provide a map or written instructions to guide Plaintiffs. Captain Miller placed a hand on Plaintiff Loren Jacobs' shoulder and stated to Plaintiff Loren Jacobs that there were no maps or written instructions, and that if Plaintiff Martha Jacobs did not move immediately Plaintiff Loren Jacobs would be arrested and would probably have to spend the night in jail and could not be bailed out until later.

48.    On Monday, September 7, 2009, Plaintiffs clearly observed in plain sight closer to Saginaw Street, and on the South side of Water Street, an artist who was not part of the Festival had set up a folding table and set of chairs.  The artist,

**PLAINTIFFS' COMPLAINT**

Tommy Nichol, along with another man, were selling artwork from the area Plaintiffs had been banned.  Mr. Nichol was in plain sight for an extended period of time, but was not told to move to another location.

**Defendants' Use of Festival Permits To Deny Literature Distribution**

49.    In 2009, the Festival was held on Labor Day weekend, September 4-7, 2009, on the streets and sidewalks of portions of the City of Pontiac, Michigan.

50.    On information and belief, permission for the Festival's use of portions of the streets and sidewalks of the City of Pontiac is required and must be obtained by application for a permit from the Defendant, City of Pontiac.

51.    On information and belief, the 2009 permit for the Festival specified which portions of the streets and sidewalks would be restricted for the use of the Festival.  As in past years and as will be in future years, Defendants' permits create a scheme wherein Defendants enforced and applied the written and unwritten policies, customs and practices adopted and enforced under color of State law to obstruct and deny Plaintiffs' constitutional and civil rights.

52.    On information and belief, the 2009 permit issued to the Festival never specified that the streets and sidewalks outside the enclosed and fenced Festival area would be restricted for the exclusive use of the Festival.

**PLAINTIFFS' COMPLAINT**

53.     On information and belief, the 2009 permit issued to the Festival never specified that the streets and sidewalks outside the enclosed and fenced Festival area would be closed to the general public during the Festival.

54.     On information and belief, the general public does not purchase any tickets or pay any admission fees to be allowed to traverse the public streets and sidewalks outside the enclosed and fenced Festival area.

55.     On information and belief, businesses located outside the enclosed and fenced Festival area, which are accessed by the public streets and sidewalks, are open to the general public during the Festival.

56.     On information and belief, the general public goes to businesses located outside the enclosed and fenced Festival area, which are accessed by the public streets and sidewalks, for the purpose of patronizing said businesses and not to attend the Festival during the Festival.

**Allegations Supporting Equitable Relief**

57.     As a result of the 2007 threat of arrest, the 2008 interaction, and the 2009 threat of arrest, Plaintiffs are uncertain whether Defendant, City of Pontiac, will permit or prohibit Plaintiffs' distribution of literature and speaking with the general public outside the 2010 Festival, or other future Festivals, or where and upon what arbitrary conditions Defendant, City of Pontiac, will permit or prohibit

**PLAINTIFFS' COMPLAINT**

distribution of literature and speaking with the general public outside the 2010 Festival, or other future Festivals.

58.     Plaintiffs' uncertainty is founded upon the arbitrary and inconsistent directives which have already caused the violations of Plaintiffs' constitutional and civil rights alleged herein and those actions have caused, and will continue to cause, Plaintiffs to suffer extreme hardship, actual and impending, irreparable injury and damage.

59.     Plaintiffs currently suffer from the denial of rights because of Defendants' policies and actions taken under color of State law pursuant to official policies and acts of Defendant, City of Pontiac, as interpreted and applied against Plaintiffs.

60.     There is a substantial likelihood that Plaintiffs will prevail on the merits in this case because Defendants' policies, actions, customs and practices, as applied against Plaintiffs, constitute an abridgement of their constitutional rights and such restrictions are strictly scrutinized.

61.     The harm to Plaintiffs outweighs any subjective harm to the Defendants.

62.     The public interest is benefited when constitutional and civil rights are protected by the courts.

63.    Plaintiffs have no adequate remedy at law at this time to correct the continuing deprivations and uncertainty surrounding the exercise of their most cherished constitutional liberties.

64.    Plaintiffs have a concrete and definable desire to continue distributing literature and speaking with the general public during the 2010 Festival and have a specific and concrete intent to continue engaging in this activity as they have since 2004, but they are fearful of being arrested by Defendants for exercising their protected constitutional and civil rights.  Based upon Defendants' past actions, Plaintiffs are uncertain whether they will be allowed to or be prohibited from distributing literature and speaking with the general public during the 2010 Festival.

65.    Plaintiffs wish to continue distributing literature in 2010 and in years following 2010, and have a specific and concrete intent to continue engaging in this activity as they have since 2004, but they are fearful of being arrested by Defendants for exercising their protected constitutional and civil rights.

66.    In addition to the Festivals discussed herein, Plaintiffs wish to continue distributing literature on the streets and sidewalks open to the public during other events open to the general public in the City of Pontiac, and have a specific and concrete intent to continue engaging in this activity as they have for many years in the past, but they are fearful of being arrested by Defendants for exercising their protected constitutional and civil rights.

**PLAINTIFFS' COMPLAINT**

67.    The threat of future arrests, as evidenced by the prior application and interpretation against Plaintiffs, is both great and immediate.

68.    The future chilling of Plaintiffs' rights is an absolute certainty unless and until this court grants the injunctive and declaratory relief requested herein.

69.    Defendants' actions have chilled Plaintiffs' constitutional and civil rights to the point that they fear arrest for their desired future literature distribution activities at future Festivals and/or any other City of Pontiac public areas -- public streets and sidewalks commonly open to the public -- during any event issued a permit by Defendant, City of Pontiac.

70.    Defendants and/or Defendants' officers/agents had personal know-ledge of the events described herein.

71.    Defendants and/or Defendants' officers/agents did, with the purpose and intent of willfully, knowingly and with callous indifference deprive Plaintiffs of rights protected by the United States Constitution and threaten to arrest employees and volunteers of Plaintiff Congregation Shema Yisrael.

72.    Defendants and/or Defendants' officers/agents had the ability and authority to prevent the violation of Plaintiffs' rights protected under the United States Constitution.

**PLAINTIFFS' COMPLAINT**

73.     Defendants and/or Defendants' officers/agents failed to act in any way to prevent the alleged violations of Plaintiffs' rights protected under the United States Constitution.

74.     Because artist Tommy Nichol and another man were selling artwork in plain sight for an extended period of time from the area Plaintiffs had been banned, any reasonable officer would know, or should have known, that Plaintiffs could not equitably be banned from the same area.

75.     Because it is well settled law that literature distribution and speaking with the general public on public streets and sidewalks is a form of peaceful free speech protected by the United States Constitution, any reasonable officer would know or should have known that the Plaintiffs' literature distribution activities were within their constitutional rights.

76.     As a direct and proximate result of Defendants and/or Defendants' officers/agents violations of Plaintiffs' rights, Defendants and/or Defendants' officers/agents are liable to Plaintiffs for damages.

77.     As a direct and proximate cause of Defendants and/or Defendants' officers/agents violations of Plaintiffs' rights, Defendants are liable to Plaintiffs for attorney's fees and costs.

78.     Plaintiffs have complied with all conditions precedent before filing this Complaint.

**PLAINTIFFS' COMPLAINT**

# FIRST CAUSE OF ACTION

## Violation of the Freedom of Speech Clause of

## The First Amendment to the United States Constitution

79.    Plaintiffs hereby incorporate paragraphs 1 through 78 as if set forth fully herein, and reallege each paragraph by this reference.

80.    Religious speech is protected under the First Amendment.

81.    Defendants attempted, and indeed did, interfere -- through threats, intimidation, and coercion -- with Plaintiffs' exercise and enjoyment of their free speech rights secured by the United States Constitution.  The suppression of Plaintiffs' constitutionally protected speech was accomplished through a policy, custom, acts and omissions engaged in under color of State law.

82.    As a direct and proximate result of Defendants' violation of the Free Speech Clause, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights.

# SECOND CAUSE OF ACTION

## Violation of the Free Exercise Clause of

## The First Amendment to the United States Constitution

83.    Plaintiffs hereby incorporate paragraphs 1 through 82 as if set forth fully herein, and reallege each paragraph by this reference.

**PLAINTIFFS' COMPLAINT**

84.    Plaintiffs hold sincere religious beliefs including the belief that Jesus is the Messiah who was promised in the Hebrew Scriptures.

85.    On information and belief, Defendants do not share Plaintiffs' belief in Jesus the Messiah, or are indifferent to what Plaintiffs believe. Defendants interfered with Plaintiffs' exercise of their rights by having them removed by Defendant, City of Pontiac's police officers. Defendant, City of Pontiac, at the urging, request, encouragement, direction and insistence of Festival sponsors or organizers, encouraged, authorized, directed, and supervised the removal of Plaintiffs from outside the enclosed and fenced Festival area. The suppression of Plaintiffs' constitutionally protected speech was accomplished through a policy, custom, acts and omissions engaged in under color of State law.

86.    By reason of the aforementioned policy, practice, custom, acts and omissions engaged in under color of State law, Defendants have violated the Free Exercise Clause of the First Amendment of the United States Constitution, which has been held to be incorporated and made applicable to the States and their political subdivisions by the Fourteenth Amendment to the United States Constitution.

87.    As a direct and proximate result of Defendants' violation of the Free Exercise Clause, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights.

**PLAINTIFFS' COMPLAINT**

# THIRD CAUSE OF ACTION

## Injunctive Relief

88.     Plaintiffs hereby incorporate paragraphs 1 through 87 as if set forth fully herein, and reallege each paragraph by this reference.

89.     Defendants have adopted policies and have engaged in practices, customs, acts and omissions under color of State law hostile to Plaintiffs' rights protected under the United States Constitution.

90.     Plaintiffs have a concrete desire to continue engaging in the distribution of free literature and the expression of their religious views on the public sidewalks and other areas open to the general public during future Festivals and other events where a permit is issued by Defendant, City of Pontiac.

91.     There is a substantial likelihood that Plaintiffs will prevail on the merits in this case.

92.     The threat of unconstitutional restraint under and through the Defendants' policies, customs and practices is both great and immediate.

93.     The harm to Plaintiffs outweighs any subjective harm to the Defendants.

94.     The public interest is benefitted when constitutional and civil rights are protected by the Courts.

**PLAINTIFFS' COMPLAINT**

95.     Plaintiffs have no adequate remedy at law at this time to correct the continuing deprivations of their most cherished constitutional liberties or to clarify the uncertainty surrounding their rights to distribute literature and speak with the general public.

96.     Plaintiffs wish to continue distributing literature and expressing their free speech rights on the public sidewalks and other areas open to the general public during future Festivals and other events where a permit is issued by Defendant, City of Pontiac, and have a specific and concrete intent to continue engaging in this activity as they have in the past, but they are fearful of Defendants' future adverse actions against Plaintiffs for exercising their protected constitutional and civil rights.

97.     The threat of Defendants' future adverse actions against Plaintiffs, as evidenced by the prior application and interpretation against Plaintiffs, is both great and immediate.

98.     Plaintiffs are fearful Defendants will attempt to interfere with Plaintiffs' exercise and enjoyment of their rights in the future through intimidation, coercion, threat of arrest and incarceration.

99.     Unless restrained and enjoined by this Court, Defendants and their agents will continue to arbitrarily harass, arrest, and threaten to arrest Plaintiffs for exercising their constitutional rights.

Page 23

**PLAINTIFFS' COMPLAINT**

100.   As a direct and proximate result of Defendants' actions under their policies, practices, and customs, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights.

## FOURTH CAUSE OF ACTION

### Declaratory Relief

101.   Plaintiffs hereby incorporate paragraphs 1 through 100 as if set forth fully herein, and reallege each paragraph by this reference.

102.   An actual controversy has arisen between Plaintiffs and Defendants in that Plaintiffs contend that, as a direct and proximate result of Defendants' policy, practice, custom, acts and omissions engaged in under color of State law, they have been harmed in that Defendants' actions are hostile to a reasonable interpretation of the law as it pertains to the right to distribute religious literature and that Defendants' conduct and actions are not supported by the United States Constitution.

103.   Plaintiffs desire a judicial determination of the rights and duties of the respective parties under the United States Constitution and a judicial declaration that the distribution of religious literature and speaking to the general public while on public property during Festivals and other events in areas open to the general public without fee or cost to the public does not violate the United States Constitution.

**PLAINTIFFS' COMPLAINT**

104.   Plaintiffs desire a further judicial determination of the rights and duties of the respective parties under the United States Constitution and a judicial declaration that the threat of arresting Plaintiffs' employees and volunteers while distributing religious literature and speaking to the general public while on public property during Festivals and other events in areas open to the general public without fee or cost to the public violates the United States Constitution.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury of all issues so triable.

s/Joel J. Kirkpatrick
Joel J. Kirkpatrick, Esq.
Attorney for Plaintiffs

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     That this Court issue a permanent injunction restraining and enjoining Defendants, and their agents, employees, representatives, and all persons acting in concert, or participating with them, from enforcing any policy, practice, or custom, or engaging directly or indirectly in any act that would prevent Plaintiffs and/or Plaintiffs' employees, agents and volunteers from peacefully distributing literature

**PLAINTIFFS' COMPLAINT**

and expressing their free speech rights while on public property during Festivals and other events in areas open to the general public without fee or cost;

2.    That this Court would enter Declaratory Judgment stating that Plaintiffs and/or Plaintiffs' employees, agents and volunteers are protected by the United States Constitution when they assemble, distribute literature, and express their views while on public property during Festivals and other events in areas open to the general public without fee or cost;

3.    That this Court would enter Declaratory Judgment stating that Plaintiffs and/or Plaintiffs' employees, agents and volunteers may assemble, distribute literature, and express their views while on public property during Festivals and other events in areas open to the general public without fee or cost when not participating in the Arts, Beats and Eats Festival and/or other events issued a permit by the Defendant, City of Pontiac, and any interference with Plaintiffs' activities in these areas violates the United States Constitution;

4.    For reasonable attorneys' fees, costs and expenses under Title 42 U.S.C. § 1988 and *Code of Civil Procedure* section 1021.5, and taxable costs pursuant to Title 28 U.S.C. § 1920, and any other provision or law applicable to award Plaintiffs' fees, costs and expenses;

5.    For nominal and general damages; and

6.    For such other and further relief as the Court deems just and proper.

**PLAINTIFFS' COMPLAINT**

DATED:  September 18, 2009

Respectfully submitted by,

s/Joel J. Kirkpatrick
Joel J. Kirkpatrick (P62851)
(Local Counsel)
**Kirkpatrick Law Offices, P.C.**
31800 Northwestern Hwy., Ste 350
Farmington Hills, MI 48334
Telephone:  (248) 855-6010
Facsimile:  (866) 241-4152
Email:  joel@kirk-law.com

**PLAINTIFFS' COMPLAINT**